## ARTHUR B. SUIT *vs.* ROSA PELHAM SUIT.

### *Construction of an Agreement—Release of Claims.*

S. was entitled to a one-third interest in certain land, and being indebted
to one B. he conveyed this interest to May, as trustee, to hold for the
benefit of B. during B.'s life and then in trust for A. B. the son of S.
Subsequently the indebtedness to B. was liquidated and May, trustee,
conveyed the legal title to the land to A. B.  Prior thereto an agree-
ment was made between A. B. and his father, S. which recited that A.
B. had certain claims against S. and May and had agreed to relinquish
and discharge the same in consideration of the conveyance of certain
property by S. to A. B.  *Held*, that the agreement did not operate to
divest the title of A. B. to the land held by May as trustee because hav-
ing then an equitable fee in that land A. B. could have had no de-
mands against S. in repect to it, and S. then had an interest in that
land.

Appeal from the Circuit Court for Prince George's County
(MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*F. Snowden Hill* and *M. Hampton Magruder,* for the appel-
lant.

*Charles H. Stanley* and *J. K. Roberts* (with whom was *A. L.
Richardson* on the brief ), for the appellee.

PAGE, J., delived the opinion of the Court.

This apppeal is from a decree of the lower Court declaring,
that the estate of S. Taylor Suit is entitled in equity to the
property in dispute, and restraining Arthur B. Suit from setting
up any further claim thereto.  The questions involved, arise in
the following manner.  Arthur B. Suit filed a bill of com-
plaint charging that he is entitled to a one-third undivided in-

terest in certain land particularly described in the bill (and which will be referred to hereafter for convenience as the Brown dower land), and that the defendants named in the bill are entitled to the other two-thirds. The prayer of the bill is for a sale for the purpose of division. After proper proceedings, a decree for the sale of the property was passed. The trustee named therein made and reported a sale of part of the land, and an audit was made wherein one-third of the proceds of sale were assigned to Arthur Bingham Suit. The trustee thereupon reported to the Court that Rosa P. Suit claimed the amount which had been allowed by the audit to Arthur B. Suit, that only a small part of the land had been sold, and that by reason of Rosa Suit's claim, the trustee cannot make sale of the residue ; and prayed that Arthur B. Suit and Rosa P. Suit, as widow and trustee of her children (whose names are unknown to the petitioner) may be required to answer, etc. Both of these parties answered this petition, and asked the Court to determine to whom the proceeds of the sale of the one undivided third interest of the Brown land legally and equitably belonged. Testimony was taken by both parties, and on the 28th day of August, 1902, the Court decreed that "the estate of S. Taylor Suit, was entitled to the property and the proceeds of any sale thereof." From this decree Arthur Bingham Suit has appealed. There is no dispute about the chain of title. James L. Brown, as heir at law of his father, was entitled to a one undivided third interest in the land subject to a life estate in his mother, who held her interest under and by virtue of an assignment of dower out of the lands of her deceased husband. Brown's interest was conveyed to S. Taylor Suit, and the contention of the parties now grows out of transactions occurring subsequently between S. T. Suit and his son Arthur. S. T. Suit was indebted to one Charles K. Bingham in a large amount. His claims were placed in May's hands, as trustee, with power to sue for the same or arrange "in some mode that would secure them and to hold the proceeds" for the benefit of Arthur Bingham Suit after Bingham's death, as per letter following :

Jacksonville, Fla.,
November 30th, 1875.

George T. May.

My Dear Sir:—Mr. Suit will place some papers in your hands on which I wish to bring suit, or settle in some shape that will secure same, and hold the proceeds for the benefit of Arthur B. Suit after my death. Please so arrange it that I may have the benefit of the interest on the same during my life, and then go to Arthur Bingham Suit. I wish you to act as trustee for him. Manage this as you may think advisable for all parties as above required. My regards to your family. My health is miserable at this time, but hope soon to improve.

Most respectfully yours,

C. K. Bingham.

This indebtedness of Suit to Bingham, on the 25th day of March, 1876, amounted to the sum of $13,615.52; and for the purpose of liquidating this "in part," May, trustee, on that day purchased for $3,800, and received a conveyance in fee from Samuel of the "Joy land," 15¼ acres, and also of 7¼ acres, and in addition the Brown dower land, 101 acres.

"To have and to hold the same in trust for A. B. Suit and to be managed for his benefit, as the said trustee may think advantageous, as manifested and set forth in said declaration of trust."

It appears from the recital in this deed that it was conveyed to May, trustee, for the use of the said Arthur B. Suit, and for the purpose of liquidating in part the said indebtedness of S. T. Suit to the said Bingham.

This deed which indicated an out and out purchase of the property described therein for the sum of $3,800, placed the beneficial and equitable ownership of the property in Arthur B. Suit; which equitable estate was converted into a legal estate by the deed of George T. May, trustee, to Arthur B. Suit, dated the 18th of August, 1900. It thus appears that by these conveyances the legal and equitable title to the land in question was in Arthur B. Suit and must still be in him, unless by some means it has been taken out of him. On the 27th day of June, 1884, Arthur B. Suit and his father entered into an agreement in writing the effect of which, it is con-

tended by the appellee, was to discharge the Brown dower land from any claim in equity which Arthur might otherwise have had upon it. That agreement provides that " whereas Arthur Bingham Suit holds certain claims and demands " against the said George T. May and Samuel T. Suit " as trustee," and whereas he has agreed " to relinquish all such claims and demands, and to make to the said May and Suit " and to each of them, *as trustees,* as aforesaid, full receipts, acquittances and discharges for the said claims and demands;" therefore in consideration of the same and for divers other good and valuable considerations moving from Arthur B. Suit to them, Samuel T. Suit agreed to convey and assign to Arthur B. Suit, " By good and sufficient deeds," all that part of *Suitland* which is fully described in the agreement; and also " to put Arthur B. Suit in the full and undisputed possession " of the tract by January 1st, 1885, and to free the same " from all and every incumbrance," within two years from the date of the execution of the agreement; and to the performance of this agreement the parties severally bound themselves each to the other in the sum of two thousand dollars.

Now what claims and demands "were in existence" when this agreement was made? The trust in May was created by the letter of Bingham, and the deed from S. T. Suit. By the former, dated November 30th, 1875, certain claims against Suit in favor of Bingham, were placed in May's hands, to sue upon or secure in some shape with direction "to hold the proceeds for the benefit of Arthur B. Suit" after his death. By the deed of Suit to May it appears that at that time, that is on the 25th day of May, 1876, the amount due on the Bingham claim was $13,615.52; and "for the purpose of liquidating in part this indebtedness, the trustee, May, purchased, in fee, the tracts and parcels of land, mentioned in the deed (including the Brown dower land) "at and for the sum of $3,800." So that after the execution of this deed the condition of the trust in May's hands, was a claim against S. T. Suit for the Bingham notes for the sum of $13,615.52 less $3,800; and

the lands conveyed to him by Suit; which, by the terms of
the deed he held in fee in trust for Arthur B. Suit.    In view
of this statement it is impossible that the parties to the agree-
ment could have supposed that the title or claim to the dower
land could form "claim or demand" against Samuel.    It had
been conveyed by the father to May in trust for Arthur in pay-
ment of $3,800, part of the debt due by him to Bingham; and
under the terms of the trust as declared in Bingham's letter,
May held it in trust after Bingham's death for the use and
benefit of Arthur.    It seems to be clear that this deed to the
land in question was received by May in discharge of his
duties as trustee under the Bingham letter "to settle in some
shape" Suit's indebtedness, and hold the proceeds for the ben-
efit of Arthur B. Suit; and the effect of it, as against Samuel,
was to discharge $3,800 of his indebtedness.    S. T. Suit
therefore had, at the date of the agreement, in 1884, (and
could have had) no claim legal or equitable to the Brown
dower land; and Arthur B. Suit having then an equitable fee,
could have had no demands against his father in respect to it.
Bingham did not die, it is true, until 1891, but Suit parted
with his title in 1876 to the trustee; who held it thereafter in
accordance with the terms of said trust.    But the appellee,
Rosa Suit, contends that by the agreement of the 27th of
June, 1884, Arthur B. Suit relinquished all right to claim any
interest in the land in question; and for the purpose of sus-
taining her position offered evidence of verbal agreements be-
tween A. B. Suit and his father, (by which the latter was to
build a house on the land specifically referred to in the agree-
ment) also an entry in the diary of S. T. Suit, and also of cer-
tain transactions in reference to two policies of life insurance
upon the life of S. T. Suit, wherein A. B. Suit was the bene-
ficiary named.    Much of this evidence has been excepted to
for reasons specially stated in the exceptions.    It is not nec-
essary, however, to refer to these further than to say that such
proof cannot be material because of the fact that, as we have
.seen, the Brown dower land, at the time of the agreement,
had been conveyed to May in fee in trust for Arthur Suit, in

consideration of the liquidation of $3,800 of the indebtedness due by S. T. Suit to Bingham, and was not therefore property in which Samuel had any interest whatsoever. Evidence of what occurred between the parties as to the insurance policies, or in relation to property upon which Arthur Suit held "certain claims and demands," could not affect the title to the Brown dower land, to which S. T. Suit had then parted with all title and interest. Arthur then held the equitable fee in the property, and in respect to it did not have any claim or demand as against his father. It may be true, and doubtless was, that Arthur may then have had "certain claims and demands" against May, the trustee, and also against his father. After the completion of the transaction stated in Samuel T. Suit's deed of the 25th of March, 1876, to May trustee, there still remained due to the latter a large sum on account of the Bingham notes, in the payment and settlement of which Arthur may have had a deep interest. It may well be therefore that on the 27th of June, 1884, the day the agreement was entered into, there were outstanding demands and claims of his as against May trustee and his father, for the settlement of which the agreement was made. The record does not furnish us with any explanation as to the manner in which this balance due by the father to May, trustee, was settled. The deed of May, trustee, to A. B. Suit, of the 18th day of August, 1900, refers to the trust as having then been fully executed except as to the Brown dower land, and the record shows some of the negotiations between the Suits, which resulted in the conveyance of the land specifically described in the agreement, and the transactions with reference to the policies of insurance, but it does not contain the facts from which it can be now fully understood how that large balance was adjusted. Nor is it material to the present controversy whether the title to the land described in the agreement was or not relieved of incumbrance, within the time mentioned; nor that the father by his last will bequeathed to Arthur a sum of money, which the latter applied to the payment of the mortgage upon this property; these are doubtless some of the

transactions (and they have been numerous) which finally resulted in the settlement of the Bingham notes, and enabled May to finally execute his trust.    But they do not affect the title of Arthur to the Brown dower land, which was bought of Samuel by May, trustee, and paid for by crediting $3,800 upon the Bingham indebtedness.

In view of what we have said, it follows that we are of the opinion that the proof shows that the title and interest to the property in dispute is in Arthur B. Suit.

The decree must therefore be reversed, and the cause remanded for further proceeding in conformity with the views herein expressed.

*Decree reversed and cause remanded*
*for further proceedings.*